J. S48023/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
ALLEN MICHAEL YORK,   :
      Appellant   :
  :   No. 1671 WDA 2015

Appeal from the Judgment of Sentence February 11, 2013
In the Court of Common Pleas of McKean County
Criminal Division No(s): CP-42-CR-0000237-2012

BEFORE: BOWES, DUBOW, and MUSMANNO, JJ.

MEMORANDUM BY DUBOW, J.:           **FILED OCTOBER 26, 2016**

Appellant, Allen Michael York, appeals from the February 11, 2013

Judgment of Sentence,[1] entered in the McKean County Court of Common

Pleas following his jury conviction of Involuntary Deviate Sexual Intercourse

Person Less than 16 Years of Age and Indecent Assault Person Less than 16

years of Age.[2]  We affirm the convictions, but remand for resentencing.

The facts, as gleaned from the trial transcript, are as follows. On June

25, 2011, when he was 15 years old, D.B. ("the Victim") and his friend C.A.,

met up with Appellant, who was 19 years old.  After smoking marijuana, the

---

[1] The trial court initially entered a Judgment of Sentence on February 6, 2013, but entered an amended Judgment of Sentence on the docket on February 11, 2013.

[2] 18 Pa.C.S. § 3123(a)(7) and 18 Pa.C.S. § 3126(a)(8), respectively.

three of them went to C.A.'s house, where they played video games in C.A.'s bedroom, before turning out the lights to sleep. There were two beds in C.A.'s bedroom. After the lights were turned out, Appellant asked the Victim whether he ever thought about being bisexual. Appellant then told the Victim to come into the bed with him and demanded oral sex. The Victim testified that he did as Appellant directed because he was afraid of Appellant hurting him.

Appellant then told him not to tell anyone what had happened or he would hurt the Victim. The Victim tried to forget the incident with Appellant because, "bad stuff like that I try to forget." N.T., 10/23/12, at 157, 169. The Victim did not want to tell anyone what happened, but C.A. told him to report the incident to the police. C.A. did not hear or see anything that happened between the Victim and Appellant. *See* N.T. at 93-194.

On July 7, 2011, Corporal Timothy Lencer conducted a recorded interview of the Victim and obtained the Victim's written statement. The audio recording of the interview was subsequently lost and, thus, not produced to either Appellant or the Commonwealth.

The Commonwealth charged Appellant with the above crimes on March 5, 2012.[3] The trial court appointed Appellant counsel on May 31, 2012.

---

[3] The Commonwealth also charged Appellant with nine other crimes related to the events of June 25, 2011. The trial court dismissed those charges upon Appellant's motion during his trial.

At Appellant's October 18, 2012 Pre-Trial Conference, five days before his trial was scheduled to begin, Appellant filed a "Motion to Continue Back-Up Jury Selection and Trial," seeking more time to prepare for trial, which the trial court denied.[4]

Appellant also made an oral motion at the Pre-Trial Conference requesting the production of the Victim's and C.A.'s records from Juvenile Probation and McKean County Children and Youth Services ("CYS"). C The trial court denied this motion on October 19, 2012, but after Appellant filed a Motion to Reconsider, the trial court ordered both the Juvenile Probation department and CYS to provide the court with any records it may have in its possession with respect to the Victim and C.A. for an *in camera* review. Trial Ct. Order, 10/22/2012.

Also on October 22, 2012, Appellant filed a written "Motion to Reconsider Motion to Continue Trial." On October 23, 2012, Appellant filed a "Motion to Consider and[/]or Se[]cond Request to Reconsider Motion to Continue Trial." In these Motions, Appellant again asserted his need for more time to prepare for trial by interviewing and locating witnesses, and noted that the police had not turned over the Victim's recorded statement, and the police had been unable to find it.

---

[4] Appellant represents in his Motion for Reconsideration that his Motion to Continue "was denied on the record at the Pre-[T]rial Conference held [on October 18, 2012]." Mot. to Recons., 10/22/2012, at 1 (unpaginated). The certified record does not contain a transcript of Appellant's October 18, 2012 Pre-Trial Conference.

The trial court denied these Motions, noting that it had "resolved the issue of the release of witness/victim juvenile records by review of both [McKean County] Juvenile Probation and Children and Youth *in camera*; and [ ] determined [that] the availability of a tape of a witness statement and the availability of two witnesses is speculative." Trial Ct. Order (A), 10/23/2012.

In a separate order, the trial court specifically precluded as irrelevant the information contained in C.A.'s CYS and Juvenile Probation records. However, the trial court released C.A.'s juvenile dockets with instructions that the parties hold them in the "strictest confidence" and not divulge their contents to any other person or in any manner to the jury. Trial Ct. Order (B), 10/23/2012; **see also** Trial Ct. Op., 1/28/16, at 6-7. The trial court noted that neither Juvenile Probation department nor CYS had any records related to the Victim.

Trial began on October 23, 2012. Before the commencement of proceedings that day, Appellant filed a written "Motion in Limine and to Dismiss" in which he argued that, because the police or the Commonwealth lost the recording of the Victim's statement, the court should preclude the Victim's from testifying at trial and dismiss the charges with prejudice. In the alternative, Appellant asked for a continuance so that he could ascertain the circumstances surrounding the unavailability of the recording. The trial court denied the Motion.

At trial, the Victim, C.A., and three Pennsylvania State Troopers, Lance Schimp, Michael Britton, and Corporal Timothy Lencer, testified on behalf of the Commonwealth. Appellant presented the testimony of two witnesses: Shannon York (Appellant's father) and Wendy Vancise.

On the second day of trial, October 24, 2012, Appellant submitted a Proposed Jury Instruction addressing the Commonwealth's failure to produce the recording of the Victim's police interview. The trial court rejected Appellant's request for an adverse instruction.

Following the two-day trial, the jury convicted Appellant of Involuntary Deviate Sexual Intercourse and Indecent Assault. The Sexual Offenders Assessment Board assessed Appellant and determined that he was not a sexually violent predator. The trial court sentenced Appellant to a term of ten to twenty years' incarceration on the Involuntary Deviate Sexual Intercourse conviction,[5] and to lifetime registration pursuant to Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. § 9599, *et seq*. Appellant filed a Post-Sentence Motion on February 4, 2013, in which he, *inter alia*, challenged the weight the jury gave to the Commonwealth's evidence, and asserted a claim for credit for time served on a separate and unrelated offense. The Motion was denied by operation of law on May 30, 2013.

---

[5] Appellant's conviction of Indecent Assault merged with the Involuntary Deviate Sexual Intercourse conviction for purposes of sentencing.

Appellant did not file a direct appeal. However, on May 28, 2014, Appellant filed a timely petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541, *et seq*., alleging trial counsel was ineffective in failing to file a direct appeal as requested by Appellant. Following the appointment of counsel and a hearing, the trial court granted Appellant's PCRA Petition on September 28, 2015, and reinstated Appellant's direct appeal rights *nunc pro tunc*. This timely appeal followed on October 23, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following eight issues for our review, which we have reordered for ease of disposition:

> 1. Did the trial court err in denying [Appellant's] motions to continue trial, when Counsel had very recently been provided with names and contact information of several potential witnesses, and was requesting additional time to interview and investigate these witnesses; when there had been no prior continuances of the trial by either side; when one intended defense witness was unavailable on the day of trial and when the information presented by these witnesses would have been exculpatory to [Appellant].

> 2. Did the trial court err in denying discovery regarding (a) the release of the juvenile files of the minors C.A. and D.B., including court-mandated psychological evaluation and other information, citing lack of consent by the juveniles to the release of this information when such information was prepared for purposes of [c]ourt and not as part of individual treatment, and when such information would have been exculpatory to [Appellant]; and (b) Juvenile Probation and Children and Youth Services records concerning C.A. and [the Victim's] alleged involvement in two incidents related to the instant matter, one involving damage to tangible property and another involving an alleged sexual offense by C.A., and information concerning the investigation of the instant matter, when such

- 6 -

information would have revealed a motive to lie and would have been exculpatory to [Appellant] in the instant matter.

3. Did the trial court err in prohibiting the introduction of prior bad acts evidence with respect to a material witness, C.A., a minor, and [the Victim], the alleged victim concerning their involvement in a criminal mischief incident and an alleged sexual assault when such evidence would have shown that the juveniles had a motive to fabricate and would have been exculpatory to [Appellant].

4. Did the trial court err in admitting into evidence, over objection, the testimony of the alleged victim because the audio recording of an interview of the alleged victim was not produced in discovery, despite numerous requests for same, when testimony was adduced at trial that the recording was made and lost and, as such, [Appellant] was deprived of his right to a fair trial, right to confront the witnesses against him and due process of law under the federal and state constitutions.

5. Did the trial court err in failing to instruct the jury with the "missing evidence instruction" on the failure of the Commonwealth to produce the recording of the interview with the alleged victim, when such instruction was warranted by the evidence adduced, and the failure to so instruct was unduly prejudicial to [Appellant].

6. Is the guilty verdict for [Involuntary] Deviate Sexual Intercourse against the weight of the evidence to such an extent as to shock one's sense of justice because the testimony of both the alleged victim and the other juvenile were both internally inconsistent and inconsistent with one another, and were also inconsistent with the remaining evidence presented at trial, including the alleged victim's and witness' own prior testimony and statements concerning the events; when there was no prompt reporting of the alleged incident; when several days elapsed between the alleged incident and any interview with the police; when the alleged victim had to be reminded to tell anyone; and when the alleged victim's testimony was so wholly lacking in credibility that no reasonable jury could have found him credible.

7. Is the guilty verdict for Indecent Assault against the weight of the evidence to such an extent as to shock one's sense of justice because the testimony of both the alleged victim and the other juvenile were both internally inconsistent and inconsistent with one another, and were also inconsistent with the remaining evidence presented at trial, including the alleged victim's and witness' own prior testimony and statements concerning the events; when there was no prompt reporting of the alleged incident; when several days elapsed between the alleged incident and any interview with the police; when the alleged victim had to be reminded to tell anyone; and when the alleged victim's testimony was so wholly lacking in credibility that no reasonable jury could have found him credible.

8. Was [Appellant's] sentence illegal when (a) the trial court denied [Appellant] credit for time served from April 19, 2011 to May 27, 2011, on charges at Docket No. CP-42-CR-0000250-2011, when the charges at such docket number were dismissed by the Commonwealth and when credit for such period of incarceration was not applied to any other sentence of [Appellant]; and (b) the mandatory minimum sentencing scheme under which [Appellant] was sentenced has been held unconstitutional by the Superior Court of Pennsylvania?

Appellant's Brief at 6-7.

Appellant first challenges the trial court's denials of his multiple requests for a continuance. Appellant's Brief at 26. Appellant argues that the trial court abused its discretion in denying Appellant's requests because he had recently learned about the identities and whereabouts of two witnesses and, only five days before the commencement of trial, had been given the names of three additional, allegedly exculpatory, witnesses. *Id.*

The decision to grant or deny a motion for continuance is within the discretion of the trial court. *Commonwealth v. Hansley*, 24 A.3d 410, 418

(Pa. Super. 2011). We will reverse the decision of a trial court only for an abuse of that discretion. *Id.* "[D]iscretion is abused when the law is over-ridden or misapplied, or the result of partiality, prejudice, bias, or ill-will[,] as shown by the evidence or the record." *Id.*

In support of its decision to deny Appellant's requests for a continuance, the trial court found that the request for a continuance was merely a request to conduct a "fishing expedition."

> The court could not have permitted the testimony of specific witnesses except by granting a continuance of the trial. The delay would have been essentially a permission for [Appellant] to conduct a fishing expedition. [Appellant did] not provide any offer of proof as to how the testimony of said witnesses could be probative not even as to whether they could be found. The court, in its discretion[,] could find that there was no basis to continue a trial based on such vague speculation.

Trial Ct. Op. at 4. The trial court further opined:

> [Appellant's] first motion to continue the trial was filed on October 18, 2012, approximately five days before trial on October 23, 2012. On October 22, 2012, [Appellant] filed a Motion to Reconsider Motion to Continue Trial. The court denied this request on October 22, 2012 after the court determined that the availability of a tape of a witness statement and the availability of two witnesses was too speculative. Further, [Appellant's] last motion to continue the trial was filed less than one day before the trial was scheduled to commence. In sum, a motion to continue is within the court's discretion and the court did not feel that a continuance was warranted.

*Id.* at 14-15.

In sum, the trial court concluded that Appellant's eleventh-hour requests for a continuance amounted to nothing more than an unjustified

fishing expedition. We agree with the trial court, and conclude that it properly exercised its discretion in denying Appellant's motions for continuance.

In his second issue, Appellant avers that the trial court erred in denying his request for discovery of the Victim's and C.A.'s records from Juvenile Probation and CYS. Appellant's Brief at 16.

Our standard of review of a discovery order is well-settled: "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard [and] questions of law are afforded full appellate review . . . ." *McNeil v. Jordan*, 894 A.2d 1260, 1268 (Pa. 2006) (citations omitted).

With respect to Appellant's argument, the trial court opined as follows:

> After a Motion for Reconsideration by [Appellant] and in light of the holding [of the] U.S. Supreme Court [in] *Pennsylvania v. Ritchie*, 107 S.Ct. 989 (1987), the court ordered that McKean County Juvenile Probation and McKean County Children and Youth Services were to provide to the court any records that they may hold on D.B. and/or C.A. In *Ritchie*, the U.S. Supreme Court held that: (1) [the] defendant was entitled to have Pennsylvania Children and Youth Services file reviewed by trial court to determine whether it contained information that probably would have changed the outcome of trial, and (2) defense counsel was not entitled to examine confidential information in Children and Youth Services file. *Id.* In the court's Order of October 22, 2012, the court reviewed *in camera* the McKean County Children and Youth Services records and the McKean County Juvenile Probation records of C.A., a minor, and found that no material could be admissible for the defense of [Appellant] in his jury trial. Neither Children and Youth Services nor Juvenile Probation had any records related to [the Victim].

> Further, the court released the juvenile dockets of the adjudications and dispositions of the only charges filed against C.A. and said dockets were to be held in the strictest confidence by the attorney of the Commonwealth and the attorney for [Appellant], not to be shown nor the contents divulged to any other person nor revealed in any manner to the jury. Therefore, the court followed the procedure outlined in ***Ritchie*** and properly denied [Appellant's] request for the release of the juvenile files of the minors C.A. and [the Victim].

Trial Ct. Op. at 6-7.

We conclude that the trial court did not abuse its discretion in rendering its discovery ruling. Contrary to Appellant's contention, the trial court did not refuse to permit discovery of the records Appellant sought. In fact, after the trial court reviewed the records at issue *in camera*, it did release the juvenile dockets and dispositions filed against C.A. to the attorneys for both parties. Neither Juvenile Probation nor CYS had any records related to the Victim. Thus, the court did not deny Appellant's discovery requests. The trial court followed the proper procedure in reviewing the records of CYS and in providing the relevant adjudications from Juvenile Probation. Therefore, Appellant is not entitled to relief on this issue.

Appellant also argues that the trial court erred in refusing Appellant's request to admit into evidence the information contained in these records. Appellant's Brief at 18. He avers that this information would have demonstrated that the Victim and C.A. had motives to lie, and that Appellant

could have used the contents of the records to impeach the credibility of the Victim and C.A. *Id.* at 16, 18.

"[O]ur standard of review for the admission of evidence looks to whether the trial court abused its discretion." ***Commonwealth v. G.D.M., Sr.***, 926 A.2d 984, 986 (Pa. Super. 2007).

With respect to Appellant's claim regarding admission of C.A.'s juvenile record, after reviewing the record, the trial court concluded that it contained "no material [that] could be admissible for [Appellant's] defense." Trial Ct. Op. at 3. We have reviewed C.A.'s Juvenile Probation record and we agree with the trial court's conclusion because the records were neither relevant nor usable for impeachment purposes.

Appellant also claims that the trial court erred in not admitting evidence that the day before the incident, the Victim had damaged a car. With respect to this evidence, the trial court opined,

> The defense attorney also sought to introduce testimony of an alleged unproven bad act of the victim, i.e. that on the day prior to the incident at issue, the victim had damaged a car. This would have been testimony as to a "bad act" which had not yet been adjudicated. There is no evidence before the [c]ourt that there was any connection, whatsoever, between that act and [the] charges being tried against [Appellant]. The [c]ourt apparently is being asked to let in evidence of that act in [Appellant's] attempt to indicate to the jury that the juvenile, just because he had unrelated charges against him, would fabricate a story of being victimized by [Appellant] for the sole purpose of taking the pressure off himself on the juvenile charge. The [c]ourt rightfully determined that to be immaterial to issues before the court, and, therefore, not admissible.

Trial Ct. Op. at 3-4. We agree with the trial court's analysis that the unproven bad act of the Victim has no probative value. Accordingly, we conclude that Appellant is not entitled to relief on this claim.

In his third issue, Appellant again purports to challenge the trial court's refusal to permit Appellant to introduce evidence of the Victim's alleged vandalism of a car. *Id.* at 16. As noted, *supra*, this issue lacks merit.[6]

In his fourth issue, Appellant, relying on *Brady v. Maryland*, 373 U.S. 83 (1963), claims the trial court should have excluded the Victim's testimony at trial because the Commonwealth failed to produce the audio recording of his initial interview by police. Appellant's Brief at 19. Appellant avers that "given the inconsistencies in [the Victim's] testimony at trial and at the preliminary hearing, it is likely that the recording of the police interview would have revealed valuable evidence for impeaching [the Victim's] testimony[,]" and that "this evidence would have yielded exculpatory evidence." *Id.* at 20. Appellant contends that since the Commonwealth did not release the recording during discovery, the trial court should have precluded the Victim from testifying at trial *Id.* We disagree, finding that Appellant's reliance on *Brady* is misplaced, as *Brady* only addresses

---

[6] Moreover, even if we had not already addressed and dismissed this issue on its merits, it would be waived because Appellant failed to develop this argument within this section of his brief. *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2005).

evidence that the Commonwealth possesses and does not release, not evidence the Commonwealth loses.

As our Supreme Court has noted, "[t]he law governing alleged **Brady** violations is well-settled." **Commonwealth v. Lambert**, 884 A.2d 848, 853 (Pa. 2005). It is a violation of a defendant's right to due process for the Commonwealth to "withhold[] evidence that is favorable to the defense and material to the defendant's guilt or punishment." **Smith v. Cain**, 132 S. Ct. 627, 630 (2012) (citation omitted).

To prevail on a claim that the Commonwealth has committed a **Brady** violation, "an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." **Commonwealth v. Weiss**, 81 A.3d 767, 783 (Pa. 2013) (citations omitted).

In the instant case, Appellant alleged that the Commonwealth's failure to produce the Victim's recorded police interview implicated **Brady, supra**.

It is undisputed, however, that the audio recording of the Victim's interview with the police was missing. **See** N.T. at 217, 220. Appellant never claimed that the Commonwealth possessed, but failed to turn over to him, the audio recording. **Brady** and its progeny impose an affirmative duty on the prosecution to produce so-called "**Brady** material" when it is possessed by the prosecution during discovery. Here, because the

- 14 -

Commonwealth did not possess the audio recording, there was nothing for the Commonwealth to produce. Therefore, under the facts of this case, the holding **Brady** is inapplicable, and Appellant's claim fails.

Moreover, the trial court did not violate Appellant's due process rights when it denied Appellant's request to preclude the Victim's testimony because the Commonwealth failed to preserve the recording. **See Arizona v. Youngblood**, 488 U.S. 51, 56 (1988) (noting that, where evidence was not preserved, any due process violation "must be because of some constitutional duty over and above that imposed by cases such as **Brady**[.]"). When raising a due process claim based on the Commonwealth's failure to preserve evidence, an appellant must demonstrate that the Commonwealth acted in bad faith. **See Commonwealth v. Coon**, 26 A.3d 1159 (Pa. Super. 2011) (analyzing a due process claim based on unpreserved evidence without reference to **Brady** and its progeny, and requiring that the appellant show bad faith on the part of the Commonwealth to prevail on such a claim).

Appellant's claim fails because he has not alleged that the Commonwealth acted in bad faith in failing to locate the audio recording of the Victim's police interview. We conclude, therefore, that the trial court did not violate Appellant's due process rights in denying his request to preclude the Victim's trial testimony.

In his fifth issue, Appellant claims that the trial court improperly denied his request for a "missing evidence instruction" relating to the audio recording of the Victim's police interview. Appellant asked the court to instruct the jury that it could draw an adverse inference from the Commonwealth's failure to produce the recording of the interview. Appellant's Brief at 21. He claims that he was prejudiced by the court's denial of this request. *Id.*

The trial court's decision to give an adverse inference instruction to the jury that an unfavorable inference may be drawn from the failure of a party to produce some circumstance, witness, or document will not be reversed absent manifest abuse. *Clark v. Philadelphia Coll. of Osteopathic Med.*, 693 A.2d 202, 204 (Pa. Super. 1997).

Generally,

> where evidence which would properly be part of a case is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him.

*Id.* (citation omitted).

An adverse inference instruction is not appropriate where a witness or evidence is equally available or unavailable to both sides of the litigation. *O'Rourke on Behalf of O'Rourke v. Rao*, 602 A.2d 362, 364 (Pa. Super. 1992). Additionally, the rule does not apply where it is unlikely that the

evidence would be "unimportant, cumulative or inferior to evidence already presented." *Id.*

The record herein reveals that the trial court properly considered Appellant's request that the trial court give the jury a "missing evidence instruction," and supported its decision to deny the request. After considering Appellant's proposed instruction, the court concluded that: (1) because the recording was not available to either Appellant or the Commonwealth, Appellant could not demonstrate prejudice; and (2) that the information contained in the recording would be cumulative of other written and testimonial evidence. Trial Ct. Op. at 8-9. We agree with the trial court's conclusion. Accordingly, the trial court's decision was appropriate and a proper exercise of its discretion.

In his sixth and seventh issues, Appellant claims that the jury's guilty verdicts for Involuntary Deviate Sexual Intercourse and Indecent Assault were against the weight of the evidence because the Victim's testimony at trial was inconsistent with his previous statements and with C.A.'s trial testimony. Appellant's Brief at 22, 23.

When considering challenges to the weight of the evidence, we apply the following precepts:

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none or some of the evidence and to determine the credibility of witnesses.

> Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of

whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Talbert*, 129 A.3d 536, 545-46 (Pa. Super. 2015) (internal quotation marks and citations omitted). Further, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* at 546 (internal quotation marks and citation omitted).

In rejecting Appellant's weight of the evidence challenges, the trial court opined as follows:

[Appellant] claims that the [V]ictim and the other juvenile's testimony were inconsistent with the remaining evidence presented at trial. There was testimony given both by the victim and the other juvenile as to what happened in the bedroom which the trier of fact found credible. The inconsistencies were of unimportant details and the jury was reminded of them in [Appellant's] attorney's closing argument. The jurors chose to find them not to be indicative of any false testimony.

Trial Ct. Op. at 12.

As the trier of fact, the jury was free to determine which testimony to credit. Upon consideration of the evidence presented at trial, including the

inconsistencies between the Victim's preliminary hearing and his trial testimony, the jury obviously credited the Victim's trial testimony, and his explanation for his inconsistencies. The jury also found C.A.'s testimony to be credible. Given that the determination of credibility was exclusively within the province of the jury as fact-finder, we discern no abuse of discretion in the trial court's decision to deny Appellant's weight of the evidence claims.

In his final issue, Appellant claims that the trial court erred when it denied his request, made at his Sentencing Hearing and in his Post-Sentence Motion, for 39 days' credit for time he spent while incarcerated for unrelated acts occurring prior to his arrest on the instant charges. Appellant's Brief at 25.

A claim that the trial court failed to award credit for time served prior to sentencing is a proper challenge to the legality of the sentence. *Commonwealth v. Johnson*, 967 A.2d 1001, 1003 (Pa. Super. 2009). "As long as the Court has jurisdiction over the matter, a legality of sentencing issue is reviewable and cannot be waived." *Commonwealth v. Musau*, 69 A.3d 754, 756 (Pa. Super. 2013) (citation omitted). "Our standard of review over such questions is *de novo* and our scope of review is plenary." *Commonwealth v. Hawkins*, 45 A.3d 1123, 1130 (Pa. Super. 2012).

Appellant claims he is entitled to credit for time served on the separate and unrelated offense pursuant to 42 Pa.C.S. § 9760(4), which provides:

> (4) If the defendant is arrested on one charge and later prosecuted on another charge growing out of an act or acts that occurred prior to his arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge that has not been credited against another sentence.

42 Pa.C.S. § 9760(4).

Section 9760(4) is inapplicable in the instant case. It is axiomatic that "a defendant shall be given credit for any days spent in custody prior to the imposition of sentence, but only if such commitment is on the offense for which sentence is imposed. Credit is not given, however, for a commitment by reason of a separate and distinct offense." *Commonwealth v. Clark*, 885 A.2d 1030, 1034 (Pa. Super. 2005) (citation and quotation omitted).

As Appellant concedes, the offense for which he was incarcerated for 39 days (before the Commonwealth dismissed the charges against him) was separate and distinct from the offenses for which he is now incarcerated. As such, we conclude Appellant is not entitled to credit on the instant sentence for time served on separate and unrelated offenses. Accordingly, this issue does not merit relief.

Appellant also avers that his ten-year mandatory minimum sentence is illegal because violates the United States Supreme Court holding in *Alleyne v. U.S.*, 133 S.Ct. 2151 (2013). *See* Appellant's Brief at 25. We agree.[7]

---

[7] For purposes of the application of *Alleyne* to the instant matter, we acknowledge that the holding in *Alleyne* does not apply retroactively when a

Appellant received a ten-year mandatory minimum sentence for his Involuntary Deviate Sexual Intercourse conviction pursuant to 42 Pa.C.S. § 9718(a)(1). In **Commonwealth v. Wolfe**, 140 A.3d 651 (Pa. 2016), our Supreme Court relied on **Alleyne**, and determined that Section 9718 was facially invalid. Accordingly, we vacate Appellant's Judgment of Sentence, and remand for resentencing.

Judgment of Sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2016

---

defendant's Judgment of Sentence became final before **Alleyne** was decided. **See Commonwealth v. Riggle**, 119 A.3d 1058 (Pa. Super. 2015). However, because the PCRA court reinstated Appellant's direct appeal rights on September 28, 2015, more than two years after **Alleyne** was decided, Appellant's Judgment of Sentence is not yet final.